**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| Aaron David RICO, | Case No.: 22-cv-0701-AGS-LR |
|---|---|
| Petitioner, | **ORDER ACCEPTING REPORT AND RECOMMENDATION (ECF 17) AND DENYING HABEAS PETITION (ECF 1)** |
| v. | |
| Eric MEJIA, Warden, et al., | |
| Respondents. | |

In this petition for a writ of habeas corpus, a state prisoner seeks relief from his various state convictions.

**BACKGROUND**

After a state-court trial, petitioner Aaron Rico was convicted of 25 crimes stemming from multiple robberies and burglaries, and two crimes relating to a sexual assault that took place during one of those robberies. *People v. Rico*, No. D074546, 2020 WL 6790154, at *1 (Cal. Ct. App. Nov. 19, 2020). The specific counts were "conspiracy to commit first degree burglary," "conspiracy to commit first degree burglary and robbery," "first degree robbery in concert," "first degree burglary," "forcible sexual penetration," and "assault with intent to commit forcible sexual penetration during a first degree burglary." *Id.* The California Court of Appeal affirmed those convictions, *id.* at *6, *11, and the state Supreme Court declined further review (ECF 11-56, at 2). Rico now requests federal habeas relief.

The state appellate court's recitation of the facts—which is "presumed to be correct" absent "clear and convincing evidence" to the contrary, *see* 28 U.S.C. § 2254(e)(1)— "briefly summarize[s] the nature of [Rico's] crimes": "In early 2016, a series of home burglaries and robberies occurred on six days in San Diego County." *Rico*, 2020 WL 6790154, at *2. "The victims stated that the suspects were of different races, something the police considered unique." *Id.* The suspects "typically used zip ties, shoelaces, and scarves

1

to tie up the residents" before taking "jewelry, money, personal electronics and gaming systems." *Id.*

"Crime scene evidence ultimately led" to Rico's arrest and the arrest of six "cohorts": Stephen Gomez, Robin Shawver, Aaron Rico V ("Rico V"), Victor Harvey, Jordan Wilson, and Thomas Smith. *Id.* Everyone "pleaded guilty to various charges," except for Rico and Smith who were "tried before a single jury." *Id.* "During closing arguments, Rico's counsel essentially conceded his client's guilt for aiding and abetting the crimes, claiming that Rico acted as a lookout for all of the charged offenses." *Id.* "Counsel argued however, that Rico did not aid and abet the sexual assault because the assault was not foreseeable." *Id.* "The jury rejected these arguments" and convicted Rico of "all charges, including the incident involving the sexual assault." *Id.*

In this habeas petition, Rico advances two arguments: (1) "The State failed to disclose" exculpatory evidence, violating Rico's rights, and (2) the evidence was "insufficient" to sustain his convictions on two robbery counts. (ECF 1-2, at 5, 23.) The magistrate judge recommended rejecting both claims. (*See* ECF 17.) Rico objected (*see* ECF 21), so this Court considers the matter "de novo," *see* 28 U.S.C. § 636(b)(1).

## DISCUSSION

"An application for a writ of habeas corpus . . . shall not be granted . . . unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d). "The 'contrary to' and 'unreasonable application' clauses of § 2254(d)(1) have independent meaning." *Cook v. Kernan*, 948 F.3d 952, 965 (9th Cir. 2020). "A state court's decision is 'contrary to' clearly established federal law if it applies a rule that contradicts the governing law set forth in Supreme Court cases," while a decision is "an 'unreasonable application' of clearly established federal law if it correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* (cleaned up). In this case, the Court examines the California Court of Appeal's opinion, as it is "the state's last reasoned decision." *See Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002).

2

**A.    *Brady* Violation**

Rico argued on appeal that his sexual assault-related convictions should be reversed based on a violation of *Brady v. Maryland*, 373 U.S. 83 (1963), which imposes a duty on the government to disclose "evidence favorable to an accused . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87; *see Rico*, 2020 WL 6790154, at *2–*6. The Court of Appeal rejected this claim, *Rico*, 2020 WL 6790154, at *6, and Rico now says that this ruling was both contrary to, and an unreasonable application of, clearly established law.

**1.  *Contrary to Clearly Established Federal Law***

"To establish a *Brady* violation, a defendant must show that: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence was suppressed by the government, regardless of whether the suppression was willful or inadvertent; and (3) the evidence is material to the guilt or innocence of the defendant." *United States v. Sedaghaty*, 728 F.3d 885, 899 (9th Cir. 2013). The California Court of Appeal found, and no one disputes, that the first two elements are satisfied. *See Rico*, 2020 WL 6790154, at *4 ("[T]he prosecutor conceded that the first and second elements of a *Brady* violation occurred . . . ."); (*see also* ECF 10-1; ECF 24). So only the materiality prong is at issue.

Rico argues briefly that, when it comes to materiality, the Court of Appeal applied a "sufficiency of the evidence" test that runs counter to Supreme Court precedent. (ECF 1-2, at 18; ECF 21, at 2 ("[B]oth federal and state courts have specifically held that the test for materiality under *Brady* 'is not a sufficiency of the evidence test.'" (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).) Rico correctly recites the law, but incorrectly interprets the appellate court's actions. It did not apply the wrong standard.

According to the Supreme Court, "evidence is material [for *Brady* purposes] if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (cleaned up). And a "'reasonable probability' of a different result is one in which

3

22-cv-0701-AGS-LR

the suppressed evidence undermines confidence in the outcome of the trial." *Turner v. United States*, 582 U.S. 313, 324 (2017) (cleaned up). This is the exact language employed by the California Court of Appeal. *See Rico*, 2020 WL 6790154, at *4 (holding that Rico must show that "the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict" (quoting *People v. Salazar*, 112 P.3d 14, 21 (Cal. 2005)); *id.* (defining a "reasonable probability" as a "probability sufficient to undermine confidence in the outcome" (cleaned up) (quoting *Salazar*, 112 P.3d at 25)).

And Rico doesn't point to any part of the opinion that seems to apply a standard different from the one it set forth. In fact, the appellate court reiterated the correct standard in its holding: "Rico has not shown that the withheld DNA evidence would have put the case against him in such a different light as to *undermine confidence in the verdict* on the charges against him." *Rico*, 2020 WL 6790154, at *6 (emphasis added).

The California Court of Appeal stated, and applied, the correct materiality standard. Thus, its opinion was not "contrary to . . . clearly established Federal law." *See* 28 U.S.C. § 2254(d).

### 2. *Unreasonable Application of Clearly Established Federal Law*

Rico's *Brady* argument primarily focuses on the Court of Appeal's purportedly "unreasonable application" of the materiality standard. *See* 28 U.S.C. § 2254(d). At trial, the prosecution presented evidence that four men robbed Jane Doe's house and that one of the men threatened her with a gun and sexually assaulted her. *Rico*, 2020 WL 6790154, at *2–*3. A few days after this incident, "three men entered the home belonging to" a couple named James and Betsy. *Id.* at *5. After binding the couple's hands, "[t]he men left with cash, the couple's wallets, electronic equipment, two cell phones, and jewelry." *Id.* "Later in the day," a passerby found Betsy's wallet near a shopping center that "contained a store where items stolen in the robbery series had been pawned." *Id.* This Good Samaritan took the wallet to the police. *Id.* "[F]ollowing the close of evidence" in Rico's trial, "the prosecutor learned that the crime lab had matched another Black man's DNA to Betsy's

wallet." *Id.* That man, A.B., "lived within a half a mile of the location of the discarded wallet" and "had prior arrests and convictions for both burglary and robbery." *Id.* "After the jury returned its verdicts," Rico "moved for a new trial based on the prosecutor's failure to disclose" this new DNA evidence. *Id.* The trial court denied Rico's motion, and the Court of Appeal affirmed. *See id.* at \*6. Rico claims that doing so was an unreasonable application of *Brady*.

Throughout trial, Rico's defense "was that he was always the lookout in the robberies," save for one that happened after Doe's assault. (ECF 1-2, at 16.) He now contends that "evidence of an additional individual who could have been a perpetrator in those other robberies would have solidified the argument" that he was also just the lookout on the night of Doe's assault, absolving him of liability. (*Id.* at 16.) According to Rico, the prosecution's theory was that "there were only four individuals involved in the crimes at the Jane Doe residence," and since one of the other perpetrators, Robin Shawver, named Rico in her testimony, he "had to be one of the four individuals allegedly inside the Doe residence and could not have been acting as a lookout." (ECF 21, at 2–3.) The "problem with [this] theory," Rico insists, is that "Shawver did not name all the people that were there, including who was in [a] second car" at the scene. (ECF 1-2, at 17.) "Thus it is reasonabl[y] possible that [Rico] did act as a lookout while someone from the other car went inside." (*Id.*) And "[h]ad the jury heard evidence that another Black man, with multiple felony arrests/convictions for theft, burglary, and robbery, could have been involved in the" burglary at James and Betsy's residence, "this would have severely undercut all of the arguments by the prosecutor that [Rico] could not have been acting as a lookout" and placed a "cloud of doubt over Shawver's testimony." (*Id.* at 17, 22.)

The California Court of Appeal disagreed, concluding that "the withheld DNA evidence" would not have "put the case against [Rico] in such a different light as to undermine confidence in the verdict." *People v. Rico*, 2020 WL 6790154, at \*6. That court's conclusion was a reasonable application of law. After all, Shawver testified that she was present the night of the Doe incident, and her testimony was clear that there were "just"

5

"five" people present on the night of the Doe robbery: Rico, Gomez, Smith, Rico V, and herself. (*See* ECF 11-35, at 134–35 (Q: "Who were you with besides Stephen Gomez?" A: "Rico V, Rico III, and Smith.").) When asked if there were "any additional people that came and hung out with" them, Shawver responded, "[j]ust the five of us." (*Id.* at 135.) When asked again whether it was "the five of [them] that hung out all night," Shawver said that "[t]here was one point in time where [they] split cars," but they "ended up in the same car again." (*Id.*) Specifically, Shawver explained that she went with Gomez and Rico V in her car, while Rico and Smith were in the second car, and they all "follow[ed] each other" to Doe's neighborhood. (*Id.* at 136–37.)

The California court reasonably concluded that the DNA evidence does not undercut this testimony. The DNA evidence, found on an empty and abandoned wallet "within a half mile" of where A.B. lived, *Rico*, 2020 WL 6790154, at *3, doesn't definitively tie A.B. to the crime scene at James and Betsy's house, much less to the scene at Doe's house. Indeed, "[f]urther investigation failed to yield any connection between A.B. and the" perpetrators. *Id*. Nor does Rico point to any other evidence tying A.B. to the string of robberies. At best, the DNA evidence introduces a *possibility* that A.B. was involved in the criminal enterprise at some point, and an even slimmer possibility that A.B. was at the Doe scene. The "mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality'" for *Brady* purposes. *United States v. Agurs*, 427 U.S. 97, 109–10 (1976).

Nor is the Court persuaded that the DNA evidence would have placed a "cloud of doubt" over Shawver's testimony. As the Court of Appeal pointed out, Shawver's overall testimony was corroborated by surveillance video from the night of the robbery, cell phone records, recorded conversations, and DNA evidence tying Gomez to one of the other robberies. *See Rico*, 2020 WL 6790154, at *5–6. "Even if the ability to challenge [Shawver] with [the DNA] evidence in real time would have added to the reasons the jury had to doubt [Shawver's] credibility, key parts of [her] testimony were corroborated." *See United States v. Alahmedalabdaloklah*, 94 F.4th 782, 829 (9th Cir. 2024). And

22-cv-0701-AGS-LR

"[s]uppressed evidence that . . . would be used to impeach testimony of a witness whose account is strongly corroborated is generally not considered material for *Brady* purposes." *Johnson v. Folino*, 705 F.3d 117, 129 (3d Cir. 2013).

At bottom, the DNA evidence is not, as Rico argues, the type of impeachment evidence that rises to the material level. *Cf. Carriger v. Stewart*, 132 F.3d 463, 479–80 (9th Cir. 1997) (finding that suppressed evidence that a "star witness" has a "long history of lying to police and blaming his crimes on others" is material); *United States v. Kohring*, 637 F.3d 895, 903 (9th Cir. 2011) (holding that "newly-disclosed information" that one of the few witnesses "sexually exploited minors and attempted to conceal that behavior by soliciting perjury from the minors and arranging for one of the minors to make herself unavailable to testify against" him was material); *Comstock v. Humphries*, 786 F.3d 701, 711–12 (9th Cir. 2015) (concluding that "suppression of [witness's] expressed doubts and recollections was especially prejudicial" since that witness's "testimony was the linchpin of the State's case"). Thus, the Court of Appeal's decision that the suppressed evidence was not material for *Brady* purposes was a reasonable application of the law.

Rico's other arguments on this subject boil down to a disagreement with how facts in this case could be interpreted. (*See, e.g.*, ECF 21, at 3 ("To support its findings, the court relied on the testimony of Jane Doe and codefendant Robin Shawver, as well as evidence from the surveillance video, [recorded] conversations, and cell phone tower information. However, none of these are dispositive as to Petitioner nor places him in the Jane Doe residence at the time of the sexual assault."); *id.* at 7 ("[A]lthough the prosecutor continually suggested to Jane Doe that there were four people in the room during the sexual assault, this was *not* her testimony."); *id.* at 8 ("There was no evidence presented as to the distance between the parked cars and the Jane Doe residence to support a conclusion that the logical place for a lookout would be 'by the cars' rather than at the target residence.").) But a petitioner's "frustration with those courts' findings of fact do not render them so 'unreasonable' that 'reasonable minds reviewing the record could not agree with them.'" *Knox v. White*, No. 23-35078, 2023 WL 8469175, at *2 (9th Cir. Dec. 7, 2023) (quoting

22-cv-0701-AGS-LR

*Ayala v. Chappell*, 829 F.3d 1081, 1094 (9th Cir. 2016)); *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

Rico's *Brady*-violation claim is denied.

## B.    Sufficiency of the Evidence

The counts Rico challenges on sufficiency grounds pertain to two different robberies. For each incident, Rico was convicted of robbing the husband-and-wife homeowners and a child of each of the couples who were inside the homes during the crimes. *See Rico*, 2020 WL 6790154, at *7. On appeal, Rico claimed that the evidence supporting his robbery convictions was insufficient as to alleged victims M.N. (who is an adult) and John Doe (a minor), but the Court of Appeal rejected that claim. *See id.* at *6–11. Rico now contends that this was an "unreasonable application" of *Jackson v. Virginia*, 443 U.S. 307 (1974), and *In re Winship*, 397 U.S. 358 (1970). (ECF 1-2, at 25.) *Winship* held that due process "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime." 397 U.S. at 364. And *Jackson* affords relief "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." 443 U.S. at 324.

"*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012). First, the Court of Appeal "may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Id.* (quotation marks omitted). Second, the habeas court may "overturn a state court decision rejecting a sufficiency of the evidence challenge . . . only if the state court decision was objectively unreasonable." *Id.* (quotation marks omitted). So "the only question under *Jackson* is

8

whether [the Court of Appeal's] finding was so insupportable as to fall below the threshold of bare rationality." *Johnson*, 566 U.S. at 656.

With these broad habeas principles in mind, the Court turns to the elements of robbery in California. "Robbery is defined as the taking of personal property of some value, however slight, from a person or the person's immediate presence by means of force or fear, with the intent to permanently deprive the person of the property." *People v. Marshall*, 931 P.2d 262, 279–80 (Cal. 1997) (citing Cal. Penal Code § 211). "A person from whose immediate presence property was taken by force or fear is not a robbery victim unless, additionally, he or she was in some sense in possession of the property." *People v. Scott*, P.3d 837, 841 (Cal. 2009).

Rico contends that his robbery convictions are infirm because "[n]o force or fear was applied to John Doe or M.N.," and "the property taken in this case" was not "in the presence or possession" of those victims. (ECF 1-2, at 33–34.) The Court of Appeal found otherwise, *Rico*, 2020 WL 6790154, at *8–11, and that conclusion was reasonable.

### 1. *Force or Fear*

Starting with the "force or fear" element, Rico points out that during the robbery at John Doe's house: "John Doe was never approached by any intruder and . . . nobody got close to him"; "[n]obody entered his room"; "there is no evidence that he was ever seen by the intruders"; "[n]o gun was pointed at him"; and "he was never threatened." (ECF 1-2, at 33.) "Likewise," says Rico, M.N.'s "doorknob was jiggled but her room was never entered," a "gun was never pointed at her," and "[e]ven after she was noticed by the intruder she was never approached, touched, or threatened." (*Id.*) In fact, according to Rico, "the prosecution did not point to any evidence that either of those victims . . . were placed in fear or the subject of force." (*Id.* at 34.) Thus, Rico contends that the evidence was insufficient to support the robbery convictions. Not so.

For purposes of robbery in California, "fear" includes the "fear of an unlawful injury to the person or property of the person robbed, *or any relative of his or member of his family*." Cal. Penal Code § 212 (emphasis added). The record has ample evidence that the

9

22-cv-0701-AGS-LR

robberies were accomplished by means of fear. During the robbery at John Doe's house, the child saw his father "lying face down on the ground," and "[t]here was a man standing over his [dad's] head with a gun." (ECF 11-33, at 106.) John Doe described his feelings at that time as "scared and confused." (*Id.*) The adult victim M.N. had a similar experience: during the robbery at her house, she "went out of [her] room" to "take a peek" and saw a man that "had a gun" and was "[p]ointing it at" her elderly father. (ECF 11-31, at 40.) When one of the men saw her, she "ran into [her] room" where her children were sleeping and "locked the door." (*Id.* at 43.) At that point, she "told [her] kids to hide" and called 911. (*Id.*) The 911 operator was confused about what was happening. When the operator asked M.N. to "go outside and talk to [her] parents," M.N. refused because she was "scared and nervous." (*Id.* at 46.)

Given this record, and that "the requisite fear need not be the result of an express threat," *People v. Flynn*, 91 Cal. Rptr. 2d 902, 906 (Ct. App. 2000), it was reasonable for the Court of Appeal to conclude that "[i]in both robberies," "the fear caused by the robbers' actions, allowed the robbers to accomplish the taking," *Rico*, 2020 WL 6790154, at *9. *See also People v. Brew*, 2 Cal. Rptr. 2d 851, 854 (1991) ("Where intimidation is relied upon, it can be established by proof of conduct, words, or circumstances reasonably calculated to produce fear." (cleaned up)). Since the appellate court's opinion easily clears the low bar of "bare rationality," this Court may not disturb it. *See Johnson*, 566 U.S. at 656.

### 2. *Possession of the Property*

As for the possession element, Rico asserts that in John Doe's case: the stolen property "was owned directly by the parents"; "[t]here was no evidence that John Doe was anywhere near the property"; and it is "not clear that [John Doe] had any right to possess the property." (ECF 1-2, at 34.) Rico makes similar arguments as to M.N., explaining that "[t]here was no evidence that [M.N.], who was an adult, had any possessory interest in that property." (*Id.*) Therefore, according to Rico, "it is not clear that any of the property taken in this case was in . . . possession of the alleged victims." (*Id.*) The Court again disagrees.

"[N]either ownership nor physical possession is required to establish the element of possession for the purposes of the robbery statute." *People v. Scott*, 200 P.3d 837, 841 (Cal. 2009). "[A] person who has the right to control property has constructive possession of it," which is sufficient. *Id.* To establish constructive possession, the "victim of a robbery [must] have a 'special relationship' with the owner of the property such that the victim had authority or responsibility to protect the stolen property on behalf of the owner." *Id.* "Two or more persons may be in joint constructive possession of a single item of personal property, and multiple convictions of robbery are proper if force or fear is applied to multiple victims in joint possession of the property taken." *Id.*

In *People v. Hutchinson*, 229 Cal. Rptr. 3d 136 (Ct. App. 2018), the court considered a contention like the one Rico advances here: "that a 15-year-old girl inside the residence at the time of the robbery—the homeowners' daughter—could not be deemed a victim of the robbery because she did not actually or constructively possess any of the stolen property." *Id.* at 139. The court "disagreed," noting that a "special relationship" for purposes of constructive possession "may include close relatives who live in the same household or visit frequently." *Id.* at 139, 143. Because John Doe and M.N. are close relatives (children) of the property owners, and because they lived in the same household as the owners, the same logic applies here. (*See* ECF 11-31, at 35; ECF 11-33, at 68.)

Rico tries to distinguish *Hutchinson* in two respects. First, in *Hutchinson*, the 15-year-old "was physically and directly confronted" and "physically detained with her wrists tied behind her back," whereas here, "neither [M.N.] nor John Doe were touched or placed in the position of their parents." Second, "unlike" the *Hutchinson* 15-year-old "whose watch was stolen," "there was no evidence that either victim here owned or used any of the stolen property." (ECF 1-2, at 36–37.)

Neither point is persuasive. Nor do these arguments suggest that the California Court of Appeal's opinion lacks bare rationality. First, the fact that neither John Doe nor M.N. were physically touched or assaulted has no bearing on whether they possessed the stolen property. *See Pena-Rojas v. Sessions*, 724 F. App'x 622, 623 (9th Cir. 2018) (describing

11

the separate and distinct "elements of robbery," including "the felonious taking of personal property *in the possession of another*" that is "accomplished *by means of force or fear*" (emphasis added)). Second, it is of no moment that John Doe and M.N. did not own any of the stolen property. In addition to noting that the 15-year-old *Hutchinson* victim owned a watch that was taken, the court later explained that "one need not own or have a legal right to the property in order to have possession of it." *Hutchinson*, 229 Cal. Rptr. 3d at 144–45. Given this principle, and "the codified special relationship" between the 15-year-old "and her parents," the court "decline[d] to hold that" the minor "could not be deemed a robbery victim." *Id.* at 145. The court made no mention of the property the minor owned in reaching this conclusion. Similarly, here "it is undisputed" that John Doe and M.N. "resided in, and had unrestricted access to, the home and that nearly all the stolen property" "was accessible to the home's residents." *See id.* at 144; (*see* ECF 11-31, at 35; ECF 11-33, at 68). So John Doe and M.N. could reasonably have been found to possess the stolen items, and the Court of Appeal's finding on this score was objectively reasonable.

To the extent Rico argues that the theory of possession articulated in *Hutchinson* "is not valid under California law" (ECF 1-2, at 36), this point fails because federal habeas courts "are bound by a state's interpretation of its own laws," *Himes v. Thompson*, 336 F.3d 848, 852 (9th Cir. 2003). Rico's insufficiency claim is also denied.

## C.    New Arguments

Rico raises a few new arguments in his objections to the Report and Recommendation. A "district court has discretion, but is not required, to consider [arguments] presented for the first time in a party's objection to a magistrate judge's recommendation." *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000). On the other hand, a "federal court may not grant habeas relief to a state prisoner unless he has properly exhausted his remedies in state court." *Peterson v. Lampert*, 319 F.3d 1153, 1155 (9th Cir. 2003). While the Court doubts whether these new claims would pass procedural muster, they are "clearly not meritorious," so it makes sense to "proceed to the merits," as "the result will be the same." *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002).

12

First, Rico attacks the "immediate presence" element. According to Rico, the Court of Appeal "erroneously conclude[d] that the act of robbery can be said to have occurred in the victim's presence as long as [that victim] perceived any overt act connected with the commission of the offense." (ECF 21, at 16.) But Rico doesn't point to any language in the appellate court's decision that suggests it applied this erroneous standard. *See generally Rico*, 2020 WL 6790154. Rico also claims that "there is no substantial evidence that something of value was taken from the victim's person or immediate presence," because "there was no evidence either victim had any personal knowledge that a taking had occurred," and neither victim was in the same room as the stolen property during the robbery. (ECF 21, at 19; *see also id.* at 18.) But in the context of robbery, "property may be found to be in the victim's immediate presence even though it is located in another room of the house," or even "in another building on the premises." *People v. Hayes*, 802 P.2d 376, 407 (Cal. 1990) (en banc). Since John Doe and M.N. were inside the houses where the property was stolen, there was sufficient evidence to find that the items were taken from their immediate presence. *See also People v. Webster*, 814 P.2d 1273, 1228 (Cal. 1991) (en banc) ("The jury could thus reasonably infer that but for defendant's attack, [the victim's] relative proximity to the car [(a quarter of a mile)] would have allowed him to take effective physical steps to retain control of the vehicle, and to prevent defendant and his companions from stealing it.").

Next, Rico reasons that because "there was no evidence either victim had any personal knowledge that a taking had occurred," witness statements that "the victim's had property taken from them" were not "supported by personal knowledge" in violation of the California Evidence Code, section 702. (ECF 21, at 19.) Rico also argues that neither victim was "even aware that a taking had occurred until they were told about it from others, which is inadmissible hearsay." (*Id.* at 17.) But this Court is "not a state supreme court of errors"; it does "not review questions of state evidence law." *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991); *Estelle v. McGuire*, 502 U.S. 62, 63 (1991) ("[I]t is not

22-cv-0701-AGS-LR

the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Finally, Rico points out that *Hutchinson*—the main case the Court of Appeal relied upon in making its possession determination—"was not decided until mid-2018, more than two years" after the robberies were committed. (ECF 21, at 21.) So, in Rico's telling, applying *Hutchinson* violated the Constitution's *Ex Post Facto* Clause, which "prohibit[s] the state from applying an expanded definition of a crime or more severe punishment to conduct that occurred before the change." (*Id.*) "The *Ex Post Facto* Clause, by its own terms, does not apply to courts," though. *Rogers v. Tennessee*, 532 U.S. 451, 460 (2001). And couching such a claim as a due process issue would not bring this argument within a federal habeas court's orbit. *See id.* ("Petitioner observes that the Due Process and *Ex Post Facto* Clauses safeguard common interests . . . . While this is undoubtedly correct, petitioner is mistaken to suggest that these considerations compel extending the strictures of the *Ex Post Facto* Clause to the context of common law judging." (cleaned up)). In sum, none of Rico's fresh arguments warrant habeas relief.

**D.    Evidentiary Hearing**

Rico makes a passing request for "an evidentiary hearing." (ECF 21, at 22.) But when a petitioner "has failed to demonstrate that the adjudication of his claim based on the state-court record resulted in a decision 'contrary to' or 'involving an unreasonable application' of federal law, a writ of habeas corpus 'shall not be granted' and [the Court's] analysis is at an end." *Cullen v. Pinholster*, 563 U.S. 170, 203 n.20 (2011) (quoting 28 U.S.C. § 2254(d)). In other words, "an evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief." *Sully v. Ayers*, 725 F.3d 1057, 1075 (9th Cir. 2013). Because Rico "failed to surmount § 2254(d)'s limitation on habeas relief," he is "not entitled to an evidentiary hearing." *See id.* at 1076.

**E.    Certificate of Appealability**

An appeal of a denied habeas petition "may not be taken to the court of appeals" unless the judge "issues a certificate of appealability." 28 U.S.C. § 2253(c)(1). Such a

14

certificate is only available when "the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). A petitioner "satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his case or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 323 (2003). Importantly, Rico is not required to show "that some jurists would grant the petition," since "a claim can be debatable even though every jurist of reason might agree . . . that [he] will not prevail." *Id.*

Based on the extensive evidence supporting Rico's robbery convictions as to John Doe and M.N., the Court is satisfied that its sufficiency findings are indisputable. Rico is thus denied a certificate of appealability on his sufficiency-of-the-evidence claims.

As for the *Brady* claim, Shawver's testimony put Rico at Doe's house the night of the robbery. But the evidence placing Rico *inside* the house during the sexual assault was circumstantial. Thus, DNA evidence that introduces the possibility that another person was tied to the string of robberies and may have been inside Doe's house during the assault— rather than Rico—is debatably material. So Rico is granted a certificate of appealability as to his *Brady* claim. After all, "[t]he standard for granting a certificate of appealability is low," *Frost v. Gilbert*, 835 F.3d 883, 888 (9th Cir. 2016), and "[t]he court must resolve doubts about the propriety of a [certificate of appealability] in the petitioner's favor," *Jennings v. Woodford*, 290 F.3d 1006, 1010 (9th Cir. 2002).

## CONCLUSION

The Court accepts the report and recommendation, and Rico's habeas petition is **DENIED**. The Clerk will enter judgment accordingly. Rico is granted a certificate of appealability as to his *Brady* claim only.

Dated: March 20, 2026

Hon. Andrew G. Schopler
United States District Judge

22-cv-0701-AGS-LR